IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JODI MANSER, | CASE NO. CV-F-08-1250 LJO SMS |
| Plaintiffs, | **ORDER ON DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| SIERRA FOOTHILLS PUBLIC UTILITY DISTRICT; et al., | |
| Defendants. | |

By notice filed on October 21, 2008, defendants Sierra Foothills Public Utility District, Riverbend Golf Club, Inc., Michael Stieler, Paul Fredericks, and Marc Neff move to dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants also move to strike the damages claim in the eleventh cause of action and move for a more definite statement as to the seventh cause of action, pursuant to Fed.R.Civ.P. 12(f) and (e), respectively. Plaintiff filed an opposition to the motion on November 11, 2008. Defendants filed a reply on November 26, 2008. Pursuant to Local Rule 78-230(h), this matter was submitted on the pleadings without oral argument. Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

## FACTUAL BACKGROUND

Plaintiff began employment with Sierra Foothills Public Utility District ("Sierra Foothills") in

July 2004 in food service. Sierra Foothills operates a golf course knows as the Riverbend Golf Course in Madera, California. Plaintiff alleges that Defendant Mark Neff, head chef of the Riverbend Café, exercised significant control over plaintiff, including authority to increase or decrease her hours, to discipline plaintiff and to recommend termination of plaintiff. In this authority, plaintiff alleges defendant Neff routinely required that plaintiff and other food servers pool their tips and that Neff share in the tip pool. In addition, plaintiff observed unsanitary nature of the Neff's kitchen practices and complained in October 2007 of his practices. Neff retaliated by reducing plaintiff's work hours.

In November 2007, plaintiff suffered a serious injury in a home accident which prevented her from reporting to work. Following her discharge from the hospital, she informed Sierra Foothills that she needed to take a medical leave of absence due to the injury. After her leave and after receiving medical clearance to return to work, plaintiff was informed she was terminated due to job abandonment.[1]

The First Amended Complaint was filed on October 7, 2008. The complaint alleges the following causes of action:

1. Violation of the California Family Rights Act, Govt. Code §12945.2.
2. Violation of the federal Family Medical Leave Act, 29 U.S.C. §2601.
3. Sexual Harassment, Govt. Code §12940(j).
4. Failure to Prevent Sexual harassment, Govt. Code §12940(k).
5. Retaliation, Govt. Code §12940(h).
6. Failure to Prevent Retaliation, Govt. Code §12940(k).
7. Failure to pay wages, Violation of Labor Code, Labor Code §§201 and 203.
8. Failure to pay wages, Violation of Business and Professions Code §17200.
9. Intentional Infliction of Emotional Distress.
10. Battery and Sexual Battery.
11. Violation of Due Process, Art. 1, section 7, of the California Constitution.
12. Disability Discrimination, Govt. Code §12940(a).
13. Failure to Prevent Disability Discrimination, Govt. Code §12940(I).

---

[1] Plaintiff's complaint also alleges she was subjected to sexual harassment by her supervisors Michael Stiefler and Paul Fredricks, and later Defendant Mark Neff, head chef of the Riverbend Café. These claims are not at issue in this motion.

2

14. Failure to Provide a Reasonable Accommodation, Govt. Code §12940(m).

15. Failure to Participate in the Interactive Process in violation of Govt. Code §12940(n).

16. Violation of Labor Code §6310.

Defendant seeks to dismiss the seventh cause of action as against defendant Neff on the grounds he was not plaintiff's employer. Defendant seeks to dismiss the eighth and sixteenth claims and to strike the damages claim in the eighth cause of action..

## ANALYSIS AND DISCUSSION

**A.  Motion To Dismiss Standards**

**1.  Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (for failure to state a claim upon which relief can be granted) is a challenge to the sufficiency of the pleadings set forth in the complaint. A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229 (1984)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)); *see also Palmer v. Roosevelt Lake Log Owners Ass'n*, 651 F.2d 1289, 1294 (9th Cir. 1981). A Fed.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).

**2.  Rule 12(e)**

A Rule 12(e) motion for more definite statement is proper when the complaint is so vague and ambiguous that defendant cannot be reasonably required to frame a responsive pleading. A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted. Motions for more definite statement are viewed with disfavor, and are rarely granted. *In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (ED PA 1986).

**3.     Rule 12(f)**

A Rule 12(f) motion to strike may be made to have stricken from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, rather than to test the legal sufficiency of the claim. "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial…." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds in Fogerty v. Fantasy, Inc.* 510 US 517, 534-535, 114 S.Ct. 1023, 1033 (1994); 'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." 'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d at 1527. Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party. *Id.* Allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant. *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 402 F.Supp. 636, 637-638 (SD NY 1975).

**B.     Labor Code Claims**

Defendant contends that plaintiff failed to exhaust her administrative remedies as to her Labor Code claims. (Seventh and Sixteenth causes of action). Plaintiff argues that she is not required to exhaust administrative remedies on claims the defendant violated Labor Code §§ 201 and 203. As to the claim of violation of Labor Code § 6310, plaintiff satisfied the requirement by exhausting her administrative remedies with the California Department of Fair Employment and Housing.

**1.     Violation of Wage Laws for Unpaid Wages**

Plaintiff claims that upon her termination she was not paid the wages due to her. Labor Code §201 provides that: "(a) If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code §203 provides that: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . ."

For violations of these Labor Code provisions, an alternative mechanism exists for enforcing a employee's rights. Labor Code § 1197.5 provides an alternative for filing for a wage law violation: "(e) Any employee may file a complaint with the [Labor] division that the wages paid are less than the wages to which the employee is entitled under subdivision (a)." Alternatively, the employee may file a civil action: "(g) Any employee receiving less than the wage to which the employee is entitled under this section may recover in a civil action the balance of the wages . . ." *See Smith v. Rae-Venter Law Group,* 29 Cal.4th 345, 350, 127 Cal.Rptr.2d 516 (2002).

In *Gentry v. Superior Court*, 42 Cal.4th 443, 455, 64 Cal.Rptr.3d 773, 781 (2007), the court held that minimum wage and overtime laws are permitted to be enforced in part by private action brought by aggrieved employees. *See also Caliber Bodyworks, Inc. v. Superior Court,* 134 Cal.App.4th 365, 378, 36 Cal.Rptr.3d 31, 40 (2005) (an employee not fully paid upon discharge or layoff as required by section 201 may be entitled to recover not only his or her unpaid wages but also the statutory penalty provided by section 203 and is not subject to the Act's pre-filing notice and exhaustion requirements). Therefore, plaintiff was not required to exhaust administrative remedies as to the claims for violation of Labor Code section 201 and 203.

Indeed, defendant acknowledges in its reply plaintiff's right to bring a civil action and withdrew its opposition to the seventh cause of action. (Doc. 17, Reply Brief, p. 3 n.1.)

**2.     Exhaustion for Violation of Labor Code §6310**

Plaintiff alleges that she was demoted and retaliated against for complaining about food safety issues. Plaintiff argues that she satisfied any exhaustion requirement of Labor Code §6310 by filing her complaint with the Department of Fair Employment and Housing, as part of her exhaustion of her sexual harassment claims. Defendant's position is that plaintiff failed to exhaust the administrative remedies as required for her §6310 claim.

Labor Code §6310 provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid." Additionally, an employee who suffers retaliation or discrimination for complaining about unsafe working conditions may bring an action against the employer. Lab.C. §

5

6310(b). Labor Code § 6312 provides an administrative remedy for an employee who is discharged in violation of Labor Code section 6310: "An employee may file a complaint with the Labor Commissioner if the employee believes that he or she has been discharged in violation of Section 6310." Lab.Code §6312.

Exhaustion of administrative remedies do not exclusively lie with the Labor Commissioner. In *Hentzel v. Singer Co.*, 138 Cal.App.3d 290, 303 n.9, 188 Cal.Rptr. 159, 168 (1982), the court held that the remedial scheme under section 6312 does not provide a self-contained administrative remedy. *Hentzel* ruled that Section 6312 does not constitute a comprehensive system of administrative enforcement; indeed, it provides for no administrative remedy. In *Neveau v. City of Fresno*, 392 F.Supp.2d 1159, 1179 (E.D. Cal. 2005), the court held that in order to bring a claim under section 1102.5 or 6310, plaintiff must exhaust his administrative remedies. *Neveu*, 392 F.Supp.2d at 1180 (holding that plaintiff's claim under section 1102.5 must be dismissed for failure to exhaust). But those administrative remedies may be satisfied through alternative administrative mechanisms. In *Lund v. Leprino Foods Co.*, the court held that a plaintiff merely has to exhaust her administrative remedies in some manner such as with Department of Fair Employment and Housing and Equal Employment Opportunity Commission. *Lund v. Leprino Foods Co.*, 2007 WL 1775474, 5 (E.D.Cal. 2007) (Any number of avenues may be used to exhaust administrative remedies in addition to the filing of a complaint with the Labor Commissioner), citing *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1179-80 (E.D.Cal.2005). Thus, some form of exhaustion is required.

Here, plaintiff filed an administrative claim with the Department of Fair Employment and Housing. Plaintiff's complaint alleges that she filed a complaint alleging retaliation, harassment and discrimination with the Department.

Defendant argues that plaintiff's allegations of exhaustion "offer no specificity as to which theory of retaliation she raised in her administrative complaint." (Doc. 17, Reply brief, p. 4.) In its reply, defendant altered its argument from a <u>failure</u> to file an administrative claim, to arguing the <u>adequate scope</u> of the administrative claim.

The scope of the administrative complaint generally defines the permissible scope of a subsequent lawsuit. *Ong v. Cleland*, 642 F.2d 316, 318 (9th Cir.1981). If allegations made in a civil

action are neither similar nor reasonably related to the substance of the administrative charges, they may be precluded under that standard. *Ong*, 642 F.2d at 320.

The allegations of the First Amended Complaint, however, state that plaintiff exhausted an administrative remedy: "Plaintiff timely filed charges of harassment, retaliation, and of FEHA claims with the Department of Fair Employment and Housing (FEHA) against Defendants." (Doc. 12, First Amended Complaint, ¶14.)  Specificity in the scope of the administrative claim filed is not relevant at this stage of the proceeding.  The allegation that an administrative complaint had been filed and that the complaint included retaliation is sufficient.  In resolving a Rule 12(b)(6) motion, the court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).

Defendant's argument to consider the scope of the administrative complaint asks the Court to consider facts which are outside the pleadings. In ruling on a 12(b)(6) motion, the Court does not typically consider matters outside the pleadings.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).  The Court has not been presented with evidence which it properly may consider outside the pleadings.

**C.     Claim for Damages under the California Constitution**

Defendant argues California law does not permit a claim for damages for violation of Article 1 of the California Constitution. *Katzberg v. Regents of the University of California*, 29 Cal. 4th 300, 329 (2002).  Plaintiff argues that her claim for violation of due process was based on the failure of her employer, a public agency, to provide her with a preremoval safeguards or a "Skelly" hearing, *Skelly v. State Personnel Board* 15 Cal.3d 194, 124 Cal.Rptr. 14 (1975).

In the Eleventh Cause of action, plaintiff alleges violation of Due Process.  In her opposition, plaintiff argues that she was a permanent employee of a public agency under Govt Code §18528.  As a permanent public employee, she alleges she was entitled to a *Skelly v. State Personnel Board* hearing. Defendant Sierra Foothills wrongfully cut her hours, and thereafter terminated her, for reporting safety violations without notice and an opportunity to be heard. (Doc.12, First Amended Complaint 161-164.)

Under *Skelly v. State Personnel Bd.*, 15 Cal.3d 194, 206 (1975), a civil service employee must

be afforded certain procedural rights before he or she can be discharged. In *Skelly*, the California Supreme Court held that an agency which is considering disciplinary action against a public employee must provide the employee with procedural due process, including "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." *Id.* at 215. The employee's right to respond to the agency's proposed action implies " 'the right to respond' before a reasonably impartial, noninvolved reviewer." The Supreme Court's directive gave rise to an administrative procedure known as a Skelly hearing, in which an employee has the opportunity to respond to the charges upon which the proposed discipline is based. *Flippin v. Los Angeles City Bd. of Civil Service Com'rs*, 148 Cal.App.4th 272, 280, 55 Cal.Rptr.3d 458, 464 (2007).

In Defendant's reply, defendant argues that regardless of the need for a Skelly hearing, plaintiff does not seek a Skelly hearing as a remedy in this litigation. The complaint requests *damages* which are not permitted for a violation of Due Process.

The California Supreme Court has held that state constitutional provisions do not necessarily support a claim for monetary damages. *Katzberg v. Regents of University of California*, 29 Cal.4th 300, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002) (the California Supreme Court declined to recognize a constitutional tort to remedy the asserted violation of Art. 1, § 7(a) in the absence of a statutory provision or common law tort authorizing such a remedy.) State courts have expressly rejected state constitutional damage claims for violation of the due process and equal protection clauses. *Javor v. Taggart*, 98 Cal.App.4th 795, 807, 120 Cal.Rptr.2d 174 (2002) ("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process clause or the equal protection clause of the state Constitution."). *See also Degrassi v. Cook*, 29 Cal.4th 333, 335, 127 Cal.Rptr.2d 508, 58 P.3d 360 (2002) (no private right of action for damages for violation of free speech clause of California Constitution).[2]

---

[2] The *Katzberg* case did not preclude all damages claims for state constitutional violations. *Katzberg* sets out a framework to determine whether damages are appropriate. *Katzberg*, 29 Cal.4th at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. Under the *Katzberg* test, a court considering this question must: (1) look at the language and history of the provision for an affirmative intent to authorize a claim for damages; (2) in the absence of such affirmative intent, consider whether an adequate remedy exists, the extent to which a constitutional tort action would change established tort law, and the nature and

The eleventh cause of action alleges damages for the alleged wrongful acts. Plaintiff alleges that the "wrongful actions" caused plaintiff to "suffer consequential damages, in the amount according to proof, for lost, past, and future wages, out-of-pocket expenses, lost employment, lost benefits and diminished employability." (Doc. 12, First Amended Complaint ¶165.) Plaintiff incorporates by reference allegations of the wrongful conduct of discrimination and retaliation alleged in the complaint. Each of these wrongful actions is incorporated into the eleventh cause of action for which plaintiff seeks damages. Indeed, the prayer for relief for the eleventh cause of action seeks "compensatory damages in an amount to be proven at trial;" it does not seek a Skelly hearing. (Doc.12, First Amended Complaint p.41.) Accordingly, the claim for damages is inconsistent with California law.

**D.     Claim against Defendant Neff**

In the eighth cause of action, plaintiff alleges a claim for violation of the California Unfair Competition law ("UCL"), Cal.Bus.&Prof.Code §17200 et. seq (formally known as the "Unfair Business Practices Act"). Plaintiff alleges that defendant Neff demanded and received a distribution from the pool of gratuities collected by plaintiff, and other employees. Plaintiff alleges that in taking part of the tip pool, Neff is in violation of California Labor Code §351. Plaintiff alleges that the violation of Labor Code §351 forms the basis of Neff's unfair business practice. (Doc. 12, First Amended Complaint ¶139-142.)

Defendant argues that the eighth cause of action should be dismissed as to Neff because Neff was not plaintiff's employer. Defendant argues that recharacterizing unpaid wages as an unfair business practice does not make Neff liable for unpaid wages. Public entities are not "persons" under the UCL and therefore, by extension, employees such as Neff, do not face liability under the Act. *Cal. Medical Assn v. Regents of Cal.,* 79 Cal.App.4th 542, 551 (2000).

Plaintiff counters that a violation of Bus. & Prof. Code §17200 may be predicated upon a

---

significance of the constitutional provision; (3) if these factors weigh against the recognition of a right to damages, the inquiry ends. If, however, the factors weigh in favor of recognizing such a right, the court should also consider any special factors counseling hesitation in recognizing a damages action, including deference to legislative judgement, avoiding of adverse policy consequences, considerations of government fiscal policy, practical issues of poof, and the competence of courts to assess particular types of damages. Id. at 317, 127 Cal.Rptr.2d 482, 58 P.3d 339. The Court has not been presented with arguments by either party as to the *Katzberg* factors.

violation of Labor Code §351. Section 17200 permits liability against an individual, such as Neff, for unfair business practices. Neff's unfair practice is violation of Labor Code §351 by taking part of plaintiff's tips.

### 1. The UCL May "Borrow" Violations of the Labor Code

Labor Code §351 prevents employers from deducting from servers' wages any amount they receive by way of tips or gratuities.[3] Labor Code Section 351 prohibits an "employer" or "agent" from collecting, taking or receiving any gratuity given to an employee by a patron. Thus, Labor Code §351 prohibits an "agent" from taking pooled tips.

Bus. & Prof. Code §17200 defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Section 17200 "borrows" violations from other laws by making them independently actionable as unfair competitive practices. By "borrowing" violations of other laws, the UCL deems those violations "unfair competition" independently actionable under the UCL. *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999).

Here, plaintiff "borrowed" the violation of Labor Code §351 as the unfair practice. Indeed, California permits "borrowing" almost any such statute. "Virtually any law-federal, state or local-can serve as a predicate for a section 17200 action." *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.App.4th 1093, 1102-1103, 53 Cal.Rptr.2d 229 (1996), *disapproved on another ground in Cel-Tech*, at 184-185. Thus, the UCL may borrow violations of Labor Code §351 as a basis for liability.

### 2. An Underlying Private Right of Action Need Not Exist

Defendant argues that Labor Code §351 cannot be "borrowed" because a private right of action does not exist for the violation of §351. (Doc. 13-2, Moving Papers, p.4.) Defendant cites *Chabner v. Mutual of Omaha Life Ins. Co.*, 225 F.3d 1042 (9th Cir. 2000) for the proposition that plaintiff may not plead around an absolute bar to relief simply by recasting her cause of action as one for unfair

---

[3] Labor Code section 351 states in pertinent part: No employer or agent shall collect, take, or receive any gratuity or a part thereof that is paid, given to, or left for an employee by a patron, or deduct any amount from wages due an employee on account of a gratuity, or require an employee to credit the amount, or any part thereof, of a gratuity against and as a part of the wages due the employee from the employer. Every gratuity is hereby declared to be the sole property of the employee or employees to whom it was paid, given, or left for.

competition. Defendant argues that since §351 does not permit a private right of action, plaintiff cannot pursue one in a UCL cause of action.

California permits a UCL cause of action even though the "borrowed" statute does not provide for a private right of action. A plaintiff may bring an unfair business practices action even when "the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) ("The UCL's scope is broad. By defining unfair competition to include any 'unlawful ... business act or practice', the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.") Thus, defendant's argument is without merit.

### 3. Individual Liability under the UCL

An individual may be liable for his or her own conduct under the UCL. "Persons" under the UCL are those who engage in unfair competition. Bus. & Prof. Code §§ 17203-17205. A "person" means <u>natural persons</u>, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons. Cal.Bus. & Prof.Code § 17200 (emphasis added). A "public entity," however, is not a "person" within the meaning of the UCL. Bus. & Prof. Code §17201; *California Med. Ass'n, Inc. v. Regents of Univ. of Cal.*, 79 Cal.App.4th 542, 551 (2000). Thus, a "person" within the UCL definition who engages in unfair competition is a proper defendant.

Here, plaintiff alleges that defendant Neff took money which was due as plaintiff's tips. Had an employer engaged in the same practice of keeping plaintiff's tips, that conduct would properly be called a business practice. Under the UCL, individuals may be liable for conduct which is an unfair business practice.

Defendant's argument is that since Neff's employer, defendant Sierra Foothills, is a public entity, and exempt from liability under the UCL, Neff is also exempt.

Defendant cites *California Medical Ass'n, Inc. v. Regents of Univ. of Cal.,* 79 Cal.App.4th 542, 551 (2000) for the proposition that a public entity does not qualify as a "person" even if performing commercial activity. However, the Court in *California Medical Ass'n, Inc. v. Regents of Univ. of Cal.* did not address whether <u>an employee</u> of the public entity could be liable for conduct during the employment relationship. Defendant's reliance upon *Emery v. Visa Internat. Service Ass'n*, 95

11

Cal.App.4th 952, 960 (2002) is equally unavailing. In *Emery*, the court stated that a defendant's liability must be based on his personal "participation in the unlawful practices" and "unbridled control" over the practices that are found to violate section 17200, and not upon vicarious liability.

Here, plaintiff alleges Neff's personal "participation in the unlawful practices" and "unbridled control" over the tip pooling. Plaintiff alleges Neff demanded and received a distribution of the tip pool. (Doc. 12, First Amended Complaint, ¶140.) Plaintiff does not attribute his conduct to the employer's policy or practice. Rather, plaintiff alleges Neff demanded and received the pooled tips. *Compare Berryman v. Merit Property Management, Inc.*, 254 Cal.App.2d 407, 62 Cal. Rptr. 3d 177 (2007) (Homeowners failed to state a claim against managing agent for homeowners association under Unfair Competition Law. Although homeowners alleged that agent violated several state and federal statutes in order to support the UCL claim, the complaint failed to plead facts to support allegations that agent actually violated each of the statutes.)

The Unfair Competition Law "covers a wide range of conduct" and "embraces 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Korea Supply* Co. *v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 131 Cal.Rptr.2d 29 (2003) (*quoting Cal-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548 (1999)). A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff through unfair or unlawful business practices. *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 173, 96 Cal.Rptr.2d 518, 525 (2000).

Plaintiff claims that Neff took money from her as part of the tip pooling unfair business practice, for which plaintiff seeks restitution. Restitution of the tips is a proper remedy under the UCL. The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest. *Korea Supply*, 29 Cal.4th at 1149.

Defendant Sierra Foothill has not cited to any authority for the proposition that its immunity as a public entity is extended to its employees pursuant to the UCL for the employee's independent actions. This Court must accept the truth of plaintiff well pleaded factual allegations. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d at 337-338. Therefore, defendant has failed to carry its burden that its employee is immune from potential liability under the UCL.

**CONCLUSION**

For the foregoing reasons, the Court Orders as follows:

1. The motion to dismiss the seventh cause of action is DENIED.
2. The motion to dismiss the eighth cause of action is DENIED.
3. The motion to dismiss the sixteenth cause of action is DENIED.
4. The motion to strike the damages claim in the eleventh cause of action is GRANTED.

IT IS SO ORDERED.

**Dated:** December 4, 2008           /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE